E-FILED
Friday, 08 May, 2026  01:52:10 PM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS**

| | |
|---|---|
| JEANNE IVES, | ) Case No.: |
| *Plaintiff*, | ) |
| vs. | ) |
| | ) |
| JB PRITZKER, in his official capacity as Governor of Illinois; BERNADETTE MATTHEWS, in her official capacity of Executive Director of the Illinois State Board of Elections, and the ILLINOIS STATE BOARD OF ELECTIONS, | ) **COMPLAINT** |
| *Defendants*. | ) |

## **COMPLAINT**

Plaintiff brings this complaint against the Illinois Governor, Illinois Board of Elections, and the Executive Director of the Illinois Board of Elections, in their official capacities, seeking declaratory and injunctive relief.

### **INTRODUCTION**

1. Illinois has districting criteria that violates the United States Constitution explicitly by elevating race as a primary purpose in legislative line drawing.

2. The Supreme Court of the United States has prohibited the use of race in legislative line drawing absent a remedial purpose to specific discrimination. "'Distinctions between citizens solely because of their ancestry are by their very nature odious to a free people whose institutions are founded upon the doctrine of equality.'" *Louisiana v. Callais*, 2026 U.S. LEXIS 1950, *29 (2026) (citations omitted).

3. The Illinois Voting Rights Act of 2011 ("Illinois Voting Rights Act") mandates the creation of racial districts in violation of Plaintiff's civil rights protected by the Fifteenth

1

Amendments to the United States Constitution and Section 2(a) of the Voting Rights Act of 1965 ("Voting Rights Act").

4. The Fifteenth Amendment states: "[t]he right of citizens of the United States to vote shall not be denied or abridged by the United States or by any State on account of race, color, or previous condition of servitude." U.S. CONST. amend. XV. The Supreme Court recently reaffirmed "the general rule that the Constitution almost never permits the Federal Government or a State to discriminate on the basis of race." *Louisiana v. Callais*, 2026 U.S. LEXIS 1950, *28. Yet that's what the Illinois Voting Rights Act requires.

5. The Voting Rights Act forbids enforcing election procedures enacted with a racial intent or that results in a denial, or abridgment, of the right of any citizen of the United States to vote on account of race. 52 U.S.C. § 10101(a). The Illinois Voting Rights Act requires drawing district lines to preserve deliberate racial percentages, racial majorities, and the deliberate preservation of racial influence districts. This violates the Constitution and the Voting Rights Act.

6. By intentionally distorting district boundaries along racial lines to draw crossover districts, coalition districts, or influence districts, Illinois has and continues to violate the Fifteenth Amendment to the United States Constitution and Section 2(a) of the Voting Rights Act. *See* U.S. CONST., amend. XV, § 1; 52 U.S.C. § 10101(a); *see also Shaw v. Reno*, 509 U.S. 630, 657 (1993) ("[r]acial gerry-mandering, … may balkanize us into competing racial factions; it threatens to carry us further from the goal of a political system in which race no longer matters").

7. Plaintiff Jeanne Ives is an Illinois resident and voter who is injured by the Illinois Voting Rights Act's requirement of drawing district boundaries with racial goals and with racial

2

purposes. Plaintiff will continue to suffer this injury while the Illinois Voting Rights Act continues to be in force. This injury can only be redressed by this Court declaring the Illinois Voting Rights Act unconstitutional and enjoining its use. Plaintiff seeks a declaratory judgment, injunctive relief, expert fees, and attorneys' fees, including litigation expenses and costs, pursuant to 52 U.S.C § 10310(e) and 42 U.S.C. § 1988.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343. This action alleges violations of the United States Constitution and federal civil rights laws, affording jurisdiction under 42 U.S.C. § 1983.

9. This Court has jurisdiction to grant declaratory relief pursuant to 28 U.S.C. §§ 2201(a) and 2202.

10. Venue in this Court is proper under 28 U.S.C. § 1391(b)(1), because the Defendants reside in this district, and under 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to the claim occurred in this district.

## PARTIES

11. Plaintiff Jeanne Ives is an Illinois resident and is registered to vote in Illinois.

12. Defendant JB Pritzker is a party to this action due to his official capacity as Illinois Governor. Under the Illinois Constitution, the "Governor shall have the supreme executive power, and shall be responsible for the faithful execution of the laws." III. Const., art. V, § 8.

13. Defendant Bernadette Matthews is a party to this action due to her official capacity as Executive Director of the Illinois Board of Elections and the chief state election

3

official for Illinois. *See* 26 Ill. Adm. Code 216.100, 10 ILCS 5/1A-8(1); 10 ILCS 5/1A-8(12). Ms. Matthews is sued in her official capacity only.

14.     Defendant Illinois State Board of Elections is charged with the administration of election laws in Illinois. *See* Ill. Const., Art. III, § 5 and 10 ILCS 5/1A-1, *et seq*.

## STANDING

15.     A citizen of a state that unconstitutionally makes race a purpose of legislative line drawing is harmed. Plaintiff is a registered voter who has voted in past elections and intends to vote in Illinois' 2026, 2028, and 2030 congressional and state legislative elections. Illinois' legislative districts and representative districts were drawn pursuant to the Illinois Voting Rights Act. Accordingly, Plaintiff has been placed in racially engineered districts. *See North Carolina v. Covington*, 585 U.S. 969, 978 (2018) (plaintiffs can establish a cognizable injury if they have "been placed in their legislative districts on the basis of race" and the district court's remedy is to ensure plaintiffs are "relieved of the burden of voting" in a racially gerrymandered district); *Shaw v. Reno*, 509 U.S. 630, 650 (1993); *see also Miller v. Johnson*, 515 U.S. 900, 911 (1995) (explaining that just as the state may not "segregate citizens on the basis of race" in public parks, buses, golf courses, beaches, and schools, "it may not separate its citizens into different voting districts on the basis of race").

16.     Because Illinois' legislative districts and representative districts were drawn with racial intent, Plaintiff has suffered a constitutional injury. *See Cath. League for Religious and Civ. Rts. v. City & Cnty. of San Francisco,* 624 F.3d 1043, 1052 (9th Cir. 2010) (*en banc*) ("[t]he cause of the plaintiffs' injury here is not speculative: it is the resolution itself"). "[T]he Fifteenth Amendment applies with equal force regardless of the particular racial group targeted by the challenged law." *Davis v. Guam*, 932 F.3d 822, 832 (9th Cir. 2019).

4

## FACTUAL AND LEGAL ALLEGATIONS

17.    The Constitution requires states to periodically redistrict. *See* U.S. CONST. art. I, § 2. This process ensures that representatives are distributed relative to the current population. *See Wesberry v. Sanders*, 376 U.S. 1, 8 (1964) ("one man's vote in a congressional election is to be worth as much as another's").

### Illinois Voting Rights Act

18.    The Illinois Voting Rights Act requires, in relevant part:

(a) In any redistricting plan pursuant to Article IV, Section 3 of the Illinois Constitution [Illinois Const., Art. IV, § 3], Legislative Districts and Representative Districts shall be drawn, subject to subsection (d) of this Section, to create crossover districts, coalition districts, or influence districts. The requirements imposed by this Article are in addition and subordinate to any requirements or obligations imposed by the United States Constitution, any federal law regarding redistricting Legislative Districts or Representative Districts, including but not limited to the federal Voting Rights Act, and the Illinois Constitution [42 U.S.C.S. § 1973 et seq., and Illinois Const., Art. I, § 1 et seq.].

(b) The phrase "crossover district" means a district where a racial minority or language minority constitutes less than a majority of the voting-age population but where this minority, at least potentially, is large enough to elect the candidate of its choice with help from voters who are members of the majority and who cross over to support the minority's preferred candidate. The phrase "coalition district" means a district where more than one group of racial minorities or language minorities may form a coalition to elect the candidate of the coalition's choice. The phrase "influence district" means a district where a racial minority or language minority can influence the outcome of an election even if its preferred candidate cannot be elected.

(c) For purposes of this Act, the phrase "racial minorities or language minorities", in either the singular or the plural, means the same class of voters who are members of a race, color, or language minority group receiving protection under the federal Voting Rights Act, 42 U.S.C. § 1973; 42 U.S.C. § 1973b(f)(2); 42 U.S.C. § 1973aa-1a(e).

10 ILCS 120/5-5.

19.    **Crossover District Mandate.** Illinois' Crossover District Mandate violates the Fifteenth Amendment. Crossover districts are ones where majority voters vote with the racial

5

minority to elect the racial minority's preferred candidate. A mandate for crossover districts requires explicit consideration of race.

20.    **Coalition District Mandate**. Illinois' Coalition District Mandate violates the Fifteenth Amendment. Coalition districts are deliberate intentional fusions of two different racial groups to require the creation of districts that fuse racial groups explicitly. Coalitions districts are racial coalitions, and to require racial coalitions as a redistricting standard is a brazen impermissible racial purpose.

21.    **Influence District Mandate**. Illinois' Influence District Mandate violates the Fifteenth Amendment. Influences districts are where the racial minority may influence the election even if it cannot elect its preferred candidate. A mandate for influence districts requires explicit consideration of race.

22.    These statutory requirements make racial considerations a core purpose of all legislative line drawing in Illinois.

23.    The Illinois Voting Rights Act passed both houses in January 2011 and was approved by the Governor of Illinois on March 7, 2011. Public Act 96-1541.

**Illinois' 2021 General Assembly Redistricting Plan Enactment**

24.    Following the release of the 2020 Census data, the State of Illinois passed the General Assembly Redistricting Act of 2021 (SB 927) to redistrict the legislative districts and representative districts for the state.

25.    The General Assembly Redistricting Act of 2021 incorporated racial criteria it used to redistrict. Specifically, "(5) each of the Districts contained in the 2021 General Assembly Redistricting Plan was drawn to be consistent with the Illinois Voting Rights Act of 2011, where

6

applicable." SB0927 Enrolled at page 3, *available at* https://www.ilga.gov/documents/legislation/102/SB/PDF/10200SB0927lv.pdf.

26. The Governor echoed the racial aims of the General Assembly Redistricting Act of 2021. Upon signing the Act, Defendant Pritzker said, "These legislative maps align with the landmark Voting Rights Act and will help ensure Illinois' diversity is reflected in the halls of government." Press Release, *Gov. Pritzker Signs Revised Legislative Maps that Preserve Minority Representation and Reflect Illinois' Diversity* (Sept. 24, 2021), *available at* https://www.illinois.gov/news/release.html?releaseid=23924. "Diversity" of race is a racial purpose.

27. Defendant Pritzker's press release plowed further into unconstitutionality. It confirmed that "the Illinois Voting Rights Act of 2011 ensures redistricting plans are crafted in a way that preserves clusters of minority voters if they are of size or cohesion to exert collective electoral power. The maps signed into law today meet those requirements to adequately preserve minority representation and reflect the diversity of our state." *Id*. The press release explicitly adopted racial purposes behind redistricting guidelines, namely sorting and allocating political power on the basis of race.

28. The Illinois Voting Rights Act violates the Fifteenth Amendment's prohibition of state action for which **any** racially discriminatory intent or racial means are used. *See* U.S. Const. amend. XV. Under the Fifteenth Amendment, "all citizens, regardless of race, have an interest in selecting officials who make policies on their behalf." *Rice v. Cayetano*, 528 U.S. 495, 523 (2000) (holding that, "[u]nder the Fifteenth Amendment, voters are treated not as members of a distinct race but as members of the whole citizenry").

7

29.    Defendants are constitutionally prohibited from intentionally racially discriminating against "voters in elections to determine public governmental policies or to select public officials, national, state, or local." *Terry v. Adams*, 345 U.S. 461, 467 (1953); *see also Rice v. Cayetano*, 528 U.S. 495, 512 (2000) (the Fifteenth Amendment "grants protection to all persons, not just members of a particular race"). This "prohibition on race-based voting restrictions is both fundamental and absolute." *Davis v. Guam*, 932 F.3d 822, 832 (9th Cir. 2019).

30.    The Supreme Court recently affirmed "what the Fifteenth Amendment prohibits: present-day intentional racial discrimination regarding voting." *Louisiana v. Callais*, 2026 U.S. LEXIS 1950, *47.

31.    Even facially neutral election procedures violate the Fifteenth Amendment if they are adopted with a racially discriminatory purpose. *See Reno v. Bossier Parish Sch. Bd.*, 520 U.S. 471, 481 (1997). "Racial discrimination need only be one purpose, and not even a primary purpose, of an official act" to violate the prohibition on election procedures enacted with racially discriminatory intent. *Velasquez v. City of Abilene*, 725 F.2d 1017, 1022 (5th Cir. 1984) (citing *Arlington Heights v. Metro. Dev. Hous. Corp.*, 429 U.S. 252, 265 (1977)).

32.    The Fifteenth Amendment's race neutrality requirement restrains Illinois' authority to draw its districts. *Rice v. Cayetano*, 528 U.S. 495, 522 (2000); *see also Gomillion v. Lightfoot*, 364 U.S. 339, 345 (1960) (declining to sanction "the achievement by a State of any impairment of voting rights [] so long as it was cloaked in the garb of the realignment of political subdivisions"). A claim under the Fifteenth Amendment is distinct from claims brought under the Fourteenth Amendment. "Unlike the Fourteenth Amendment[], there is no room for a

8

compelling state interest defense, as the Fifteenth Amendment's prohibition is absolute." *Prejean v. Foster*, 227 F.3d 504, 519 (5th Cir. 2000).

33.    Racial gerrymandering—deliberately drawing district boundaries for racial purposes and with racial means—circumvents the Fifteenth Amendment. *See Shaw v. Reno*, 509 U.S. 630, 640 (1993).

## CLAIMS FOR RELIEF

### Count I. Violation of the Fifteenth Amendment

34.    Plaintiff realleges, as though fully set forth in this paragraph, all the preceding allegations of this Complaint.

35.    The Defendants acted under color of state law to deprive Plaintiff of rights secured by the Fifteenth Amendment, the Voting Rights Act, and 42 U.S.C. § 1983.

36.    The Fifteenth Amendment prohibits drawing maps with any racial intent, goal, or purpose.

37.    The Illinois Voting Rights Act required map drawers in Illinois to intentionally use race to draw district lines in contravention of the Fifteenth Amendment. Illinois' intentional distortion of district boundaries for racial purposes violates Plaintiff's Fifteenth Amendment rights.

38.    The use of race abridged and/or denied the Plaintiff's right to vote because the Defendants intentionally sought to separate voters by race.

39.    The effect of the Illinois Voting Rights Act was to intentionally give greater value to the votes of some racial groups, thereby discounting the value of votes of those groups not benefited.

9

**Count II. Violation of Section 2(a) of the Voting Rights Act.**

40.    Plaintiff realleges, as though fully set forth in this paragraph, all the preceding allegations of this Complaint.

41.    Section 2(a) of the Voting Rights Act provides that "[n]o voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color." 52 U.S.C. § 10301(a). It is synonymous with the protections of the Fifteenth Amendment.

42.    A violation of Section 2(a) of the Voting Rights Act may be based upon the finding of a discriminatory purpose alone. *See Rice v. Cayetano*, 528 U.S. 495 (2000). Illinois cannot enforce any voting qualification or prerequisite to voting or any standard, practice, or procedure that has any purpose of denying or abridging the right to vote on account of race, color, or membership in a language minority group. Stark explicit reliance on statutory racial criteria and purposes violates Section 2(a).

43.    Defendants acted under color of Illinois law to engage in discrimination based on race, color, and/or national origin in violation of: (1) Section 2(a) of the Voting Rights Act; and (2) the Fifteenth Amendment to the United States Constitution, which can be enforced through 42 U.S.C. § 1983.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for entry of a judgment:

44.    Declaring that the Illinois Voting Rights Act of 2011 violates the prohibitions on discriminatory purpose contained in the Fifteenth Amendments to the United States Constitution and Section 2(a) of the Voting Rights Act;

45.    Enjoining Defendants from acting pursuant to the Illinois Voting Rights Act;

46.    Ordering the Defendants pay Plaintiff's reasonable attorney's fees and expert fees, including litigation expenses and costs, pursuant to 52 U.S.C § 10310(e);

47.    Ordering the Defendants pay Plaintiff's reasonable attorney's fees, including litigation expenses and costs, pursuant to 42 U.S.C. § 1988 and any other applicable law; and,

48.    Granting Plaintiff such further relief the Court deems just and proper, including all other injunctive relief available to the Court.

May 8, 2026

    /s/  Kaylan Phillips
Kaylan Phillips
J. Christian Adams*
Joseph Nixon*
PUBLIC INTEREST LEGAL FOUNDATION
107 S. West Street, Suite 700
Alexandria, VA 22314
Tel: (703) 745 5870
kphillips@publicinterestlegal.org
adams@publicinterestlegal.org
jnixon@publicinterestlegal.org
    * *Application for admission forthcoming*

Attorneys for Plaintiff