E-FILED
Friday, 24 July, 2026  04:25:48 PM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| JEANNE IVES, | ) | Case No.: 3:26-cv-3158-SEM-DJQ |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | |
| JB PRITZKER, in his official capacity as | ) | **PLAINTIFF'S OPPOSITION TO** |
| Governor of Illinois; BERNADETTE | ) | **DEFENDANTS' MOTIONS TO DISMISS** |
| MATTHEWS, in her official capacity of | ) | |
| Executive Director of the Illinois State Board of | ) | |
| Elections, and the ILLINOIS STATE BOARD | ) | |
| OF ELECTIONS, | ) | |
| | ) | |
| | ) | |
| *Defendants.* | ) | |

Defendants' motions should be denied because Plaintiff Ives, an Illinois registered voter and former candidate, has sufficiently alleged a violation of the Constitution because Illinois uses racial criteria in redistricting. The Illinois Voting Rights Act (the "Act"), on its face, violates the Fifteenth Amendment, U.S. Const. amend. 15, § 1, and Section 2 of the Voting Rights Act ("VRA") by requiring the use of race to draw legislative lines.[1]

Defendants do not dispute that race is used; rather, they seek to dismiss Plaintiff's Complaint because race is not the *only* tool they use. This concession, far from supporting dismissal here, would justify *summary judgment in favor of Plaintiff* as soon as it may be heard.

Defendants find no safe harbor in the Fifteenth Amendment, only peril. Using race to allocate power violates the Fifteenth Amendment. It matters not whether it was the primary or

---

[1] This Opposition addresses both Governor Pritzker's motion to dismiss and memorandum of law in support, Dkt. 12 and 13, and the Board Defendants' motion to dismiss which incorporated by reference Defendant Pritzker's memorandum, Dkt. 14.

1

secondary purpose. Defendants confuse Fourteenth Amendment jurisprudence with Plaintiff's Fifteenth Amendment claims. The motions should be rejected.

The Act requires the same sort of racial set-aside goals in redistricting that the United States Supreme Court just struck down in Louisiana. *See Louisiana v. Callais*, 146 S. Ct. 1131, 1161 (2026). Any legislative criterion that has the purpose of allocating power on the basis of race is illegal under the Fifteenth Amendment. The Supreme Court's "acceptance of race-based state action has been rare." *Id*. at 1153 (citing *Students for Fair Admissions, Inc. v. President & Fellows of Harv. Coll.*, 600 U.S. 181, 208 (2023)).

The Complaint plausibly alleges that Illinois' race-based redistricting obligations violate the Fifteenth Amendment.

<u>**STANDARD OF REVIEW**</u>

<u>**Rule 12(b)(1)**</u>

When evaluating a plaintiff's standing under Rule 12(b)(1), courts "must accept as true all material allegations of the complaint, drawing all reasonable inferences therefrom in the plaintiff's favor." *Reid L. v. Ill. State Bd. of Educ.*, 358 F.3d 511, 515 (7th Cir. 2004).

<u>**Rule 12(b)(6)**</u>

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff need only plead facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When considering dismissal, courts must accept all well-pleaded factual allegations as true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). "Dismissal [under Rule 12(b)(6)] is proper only when it appears beyond doubt that the plaintiff can prove no set of facts that would entitle him to relief." *Marshall v. Knight*, 445 F.3d 965, 968 (7th Cir. 2006).

## <u>ARGUMENT</u>

Defendants view Plaintiff's Complaint through the wrong lens. In seeking dismissal under Rule 12(b)(1) and Rule 12(b)(6), the Defendants see the Complaint as challenging a specific map under the Fourteenth Amendment. Not close. The Complaint challenges the Act itself as unconstitutional on its face under the Fifteenth Amendment and the Voting Rights Act. The Defendants' motions wildly miss the mark and should be denied.

First, Plaintiff is a registered voter and a former and certainly future candidate for office that has been harmed by the Act. She has standing to bring her claim. Citizens who are subject to redistricting rules that require the allocation of power using racial criteria at every level of state government are harmed. The Fifteenth Amendment protects every citizen from electoral schemes with any racial intent or purpose.

Second, Defendants' own memorandum gives up the ghost and confesses away the entire dispute: that the Act "require[es] state legislators to consider whether it is possible to preserve communities of minority voters in areas in which it is possible for those voters to exercise electoral power." Dkt. 13 at 1, *compare with* Dkt. 1 at ¶ 5 ("The Illinois Voting Rights Act requires drawing district lines to preserve deliberate racial percentages, racial majorities, and the deliberate preservation of racial influence districts."). Locking in racial outcomes by "preserving" deliberately drawn racially motivated maps absent a finding of liability under the results prong of Section 2 of the Voting Rights Act is simply not something a state can do after *Louisiana v. Callais*. 146 S. Ct. at 1155-56.

Yet, Defendants pursue dismissal because they allege that the race-based factors are "subordinate" to other factors. Dkt. 13 at 10. The Fifteenth Amendment does not allow the use of race *at all*. To the extent the Fourteenth Amendment allows the use of race in a voting context –

a claim not made here by Plaintiff – under *Callais* it may only be used as a remedy to "specific, identified" discrimination, namely a factual finding and judgment that finds all of the *Gingles v. Thornburg* elements satisfied. *Callais*, 146 S. Ct. at 1152 (citation omitted.) When Defendants defend by saying race was only one of the purposes of the challenged statute and not the primary one, they present a fledgling defense under the Fourteenth Amendment but doom their case under the Fifteenth Amendment. The motions to dismiss cannot survive such a fatal concession.

I.      **Plaintiff Is an Illinois Voter in a District Subject to the Act.**

If a state a century ago, during the era of Jim Crow, enacted statutory redistricting criteria that legislative districts should *minimize* the racial population diversity of each district and *maximize* their racial homogeneity, any adult would have standing to challenge that criteria under the Fifteenth Amendment no matter where in the state they lived. The requirements of the Act using explicit racial terms and demanding that explicit racial groups must be sorted and joined to prop up power and produce racial outcomes operate in the same unconstitutional way. Anyone who lives under such onerous and racialist criteria, whether in 1926 or 2026, may challenge the criteria, period. Plaintiff has standing.

Unconstitutional statewide racial considerations are required under the Act and Plaintiff Ives will live in a system of power sorted based on race each time the state legislature draws its lines. *See Shaw v. Reno*, 509 U.S. 630, 650 (1993); *Miller v. Johnson*, 515 U.S. 900, 911 (1995) (explaining that just as the state may not "segregate citizens on the basis of race" in public parks, buses, golf courses, beaches, and schools, "it may not separate its citizens into different voting districts on the basis of race").

4

It has already happened. Plaintiff Ives has standing because she is a registered voter in Illinois who, by requirement of the Act, was sorted into single member districts using race across all layers of government and empirically so for state legislative districts.

Defendants throughout cite Fourteenth Amendment cases for their attack on Plaintiff Ives' standing. *See* Dkt. 13 at 7-9 (citing *United States v. Hays*, 515 U.S. 737 (1995); *Gill v. Whitford*, 585 U.S. 48 (2018); *Ala. Legislative Black Caucus v. Alabama*, 575 U.S. 254 (2015)). These cases are inapposite and do not foreclose Plaintiff Ives' claims.

First, *Hays* and *Alabama Legislative Black Caucus* do not apply here because those plaintiffs were focused on specific districts that they alleged were unconstitutional racial gerrymanders. In *Hays*, 515 U.S. 737, the Supreme Court held that that the plaintiffs lacked standing in part because they "do not live in the district that is the primary focus of their racial gerrymandering claim." *Hays*, 515 U.S. at 739. In *Alabama Legislative Black Caucus*, 575 U.S. 254, the Supreme Court found that the district court did not perform the proper analysis when it considered the Alabama legislative map "as an undifferentiated whole" rather than considering the claims of racial gerrymandering with respect to "the individual districts subject to the appellants' racial gerrymandering challenges." *Ala. Legislative Black Caucus*, 575 U.S. at 263-65.

Again, Plaintiff Ives is *not challenging a map*. She need not, therefore, plead specific districts. This case is a facial challenge to the state statute that requires racial considerations in the allocation of power. Those criteria are unconstitutional. Whether or not the legislative maps are unconstitutional is not the issue here despite Defendants' confusion about the target of Plaintiff's action.

Plaintiff Ives pleaded that the unconstitutional use of race steers the entire process because race is an explicit mandate in redistricting under the Act. Dkt. 1 at ¶¶ 18-22. Plaintiff Ives' allegations about the unconstitutional use of race are not limited to any specific district or districts. Every single voter in Illinois is unconstitutionally sorted by race—including Plaintiff Ives herself. Plaintiff Ives need not plead the specific district she lives in because the requirement of unconstitutional racial sorting in the Act necessarily means that as an Illinois voter, she was unconstitutionally sorted by race and will continue being sorted by race so long as the Act stands.

*Gill*, 585 U.S. 48, is also inapposite and inapplicable. In that case, the Supreme Court found that the claim was district-specific because the alleged injury was a dilution of the votes of Wisconsin Democrats resulting from partisan gerrymandering on a supposed Fourteenth Amendment theory. *Gill*, 585 U.S. at 66. This case does not involve partisan gerrymandering, nor does Plaintiff Ives allege her injury is a dilution of her vote.

Plaintiff Ives' claims are different from the cases Defendants rely on. Plaintiff Ives challenges redistricting *criteria* that rely on race to govern line drawing in violation of the Fifteenth Amendment. *See* Dkt. 1 at ¶ 3.

When challenging a statute, the plaintiff "must 'assert an injury that is the result of a statute's actual or threatened *enforcement*, whether today or in the future.'" *Ind. Right to Life Victory Fund v. Morales*, 66 F.4th 625, 629-30 (7th Cir. 2023) (citation omitted) (emphasis in original). Plaintiff Ives' allegations meet this standard. Because the Act requires racial considerations when redistricting, Plaintiff Ives properly alleged that she currently suffers and will continue to suffer Constitutional injury by having legislative districts being drawn with an explicit racial mandate. Dkt. 1 at ¶ 16.

6

Defendants rely too much on *Lance v. Coffman*, 549 U.S. 437 (2007). There, standing was wanting because the plaintiff's claims extended no further than the state redistricting law not being followed. The plaintiff there suffered no harm and sought federal courts to enforce Colorado law. "The only injury plaintiffs allege is that the law—specifically the Elections Clause—has not been followed." *Lance* at 442. Plaintiff Ives suffers far more than a state law merely not being followed. If nothing else, she will never enjoy the benefits of a redistricting mandate that will instead apply only to other classes of voters. Her ox will be forever gored under the mandates. This is not a quest by voters to vindicate the powers of the Colorado legislature, as in *Lance.* Plaintiff Ives is harmed because racial redistricting criteria are used to draw her districts and draw them in a way that will always be adverse to her on the basis of race.

Defendants argue "the Act does not command Illinois mapmakers to prioritize race over other factors; indeed, it tells them to 'subordinate' race to those factors." Dkt. 13 at 9. Defendants here raise a Fourteenth Amendment defense, not a Fifteenth Amendment defense. The Supreme Court has rejected a defendant confusing the two amendments and how differently they function. *Rice v. Cayetano*, 528 U.S. 495, 522 (2000) ("The question before us is not the one-person, one-vote requirement of the Fourteenth Amendment, but the race neutrality command of the Fifteenth Amendment.")

Whether race was considered first or second, Defendants concede that race was considered. "The Fifteenth Amendment has independent meaning and force. A State may not deny or abridge the right to vote on account of race, and this law does so." *Id.*[2]

---

[2] Again, this concession that race was used is fatal to the motions to dismiss and warrants summary judgment for Plaintiff under the Fifteenth Amendment and Voting Rights Act as soon as the issue may be timely briefed.

The Act mandates that race is infused into the redistricting process and Plaintiff Ives suffers harm because of it. *Lerman v. Bd. of Elections*, 232 F.3d 135, 143 (2d Cir. 2000) ("the injury-in-fact is caused by the 'special representational harms' that result from being identified and placed in a particular electoral district based on one's race--the underlying source of the injury is the racial classification, not the apportionment as such").

Plaintiff Ives has standing because she was unconstitutionally sorted by race under the Act and will continue to be unconstitutionally sorted by race in every redistricting cycle unless this Court finds the Act unconstitutional and enjoins its use.

## II.      Plaintiff's Claim Is Facially Plausible.

### 1.   Plaintiff Pleaded a Fifteenth Amendment Claim.

When Defendants argue that Plaintiff Ives must allege that race predominated, they invite confusion by conflating the Fifteenth and Fourteenth Amendments and incorrectly subject the Fifteenth Amendment analysis to the Fourteenth Amendment analysis.

The Fifteenth Amendment provides a distinct, independent, and different Constitutional right than does the Fourteenth Amendment. *Davis v. Guam*, 932 F.3d 822, 824, n.1 (2019) ("Because we affirm the district court on Fifteenth Amendment grounds, we do not address Davis's arguments that the 2000 Plebiscite Law violates the Fourteenth Amendment, the Voting Rights Act, and the Organic Act of Guam"); *Rice*, 528 U.S. at 522.

The Equal Protection Clause of the Fourteenth Amendment "prevents a State, in the absence of 'sufficient justification,' from 'separating its citizens into different voting districts on the basis of race.'" *Cooper v. Harris*, 581 U.S. 285, 291 (2017) (internal citations omitted).

The Fifteenth Amendment, on the other hand, prohibits "present-day intentional racial discrimination regarding voting." *Callais*, 146 S. Ct. at 1160. The Ninth Circuit emphasized the

importance and breadth of the Fifteenth Amendment when it said, "In light of the text and the unique importance of the Fifteenth Amendment, where there is any doubt about the Fifteenth Amendment's boundaries we err on the side of inclusiveness." *Davis*, 932 F.3d at 830.

Under the Fifteenth Amendment, "[a]ll citizens, regardless of race, have an interest in selecting officials who make policies on their behalf." *Rice*, 528 U.S. at 523 (holding that, "[u]nder the Fifteenth Amendment voters are treated not as members of a distinct race but as members of the whole citizenry"). The Fifteenth Amendment's "prohibition on race-based voting restrictions is both fundamental and absolute." *Davis*, 932 F.3d at 832. "Unlike the Fourteenth Amendment[], there is *no room* for a compelling state interest defense, as the Fifteenth Amendment's prohibition is *absolute*." *Prejean v. Foster*, 227 F.3d 504, 519 (5th Cir. 2000) (emphasis added).

In fact, the Supreme Court recognized the difference between Fourteenth and Fifteenth Amendment claims in its request for supplemental briefing in *Callais*. The Court asked the parties to address the question: "Whether the State's intentional creation of a second majority-minority congressional district violates the Fourteenth *or* Fifteenth Amendments to the U.S. Constitution." *Callais*, 146 S. Ct. 1131, 1152 (2026) (emphasis added). The Supreme Court understands the difference between the two Amendments and those rulings control here and require rejection of Defendants' motions.

Defendants claim that the Act must "never [be] used in a manner inconsistent with the Constitution." Dkt. 13 at 15. But, as the Complaint alleges, there is no way the Act may be used in a manner that is *consistent* with the Constitution. Dkt. 1 at ¶ 28. Regardless, the savings language in the Act doesn't save it. Legislative gingerbread and window dressing that a statute is constitutional cannot mask rank unconstitutionality. *See Whole Woman's Health v. Hellerstedt*,

579 U.S. 582, 625 (2016) (rejecting the idea that legislatures can avoid facial review of statutes with a severability clause). Either way, Plaintiff Ives has pleaded a textbook Fifteenth Amendment violation and at best that defense is a factual question.

The Supreme Court confronted racial classifications before in another Fifteenth Amendment challenge and held "[d]istinctions between citizens solely because of their ancestry are by their very nature odious to a free people whose institutions are founded upon the doctrine of equality." *Callais*, 146 S. Ct. at 1153 (quoting *Rice*, 528 U.S. at 517). This language controls whether the motions to dismiss have merit.

Defendants' reliance on *Miller v. Johnson*, 515 U.S. 900 (1995) is misplaced. There, the Supreme Court only analyzed the claims under the Fourteenth Amendment, evaluating "whether Georgia's new Eleventh District gives rise to a valid equal protection claim," *Miller*, 515 U.S. at 903. Because the Fourteenth and Fifteenth Amendments provide for separate and distinct causes of action, the standards in *Miller* do not apply here.

Defendants' reference to *Allen v. Milligan*, 599 U.S. 1 (2023), also does not offer any reason to reject Plaintiff Ives' Fifteenth Amendment claim. Once again, unlike the plaintiffs in *Allen*, Plaintiff Ives is *not* challenging any specific map but, rather, the redistricting standards themselves. *Allen* did little more jurisprudentially than keep *Gingles* alive – a case involving the results prong of Section 2, not the intent prong at issue here.

Consequently, contrary to Defendants' claims, a facial constitutional challenge is appropriate because there is no set of factual circumstances under which the Act could lawfully be applied. *See United States v. Salerno*, 481 U.S. 739, 745 (1987).

Why? The Act uses race explicitly. The Act refers to racial groups. The Act creates presumptions to allocate power on the explicit basis of race. The Act mandates using race. This

is a facial challenge because the Fifteenth Amendment prohibits what Illinois made no bones about doing – using race as a purpose in creating an election system.

Defendants' reliance on a 15-year-old case decided under the Equal Protection Clause has nothing to do with this Fifteenth Amendment case. In *Radogno v. ISBE*, the court analyzed the law under the Fourteenth Amendment and determined that the law was not unconstitutional on its face because race is not the predominant factor used. *Radogno v. Ill. State Bd. of Elections*, 2011 U.S. Dist. LEXIS 122053, \*25-26 (N.D. Ill. Oct. 21, 2011). The court focused on the language in the Act that the requirements are not to be "construed, applied, or implemented" in a way that conflicts with the United States Constitution or the VRA. *Id*. Again, as the Complaint alleges, there is no way the Act may be used in a manner that is *consistent* with the Constitution. Window dressing and gingerbread do not provide a basis to dismiss a challenge to a brazenly racially designed election statute.[3]

In *McConchie v. Scholz*, 577 F. Supp. 3d 842 (N.D. Ill. 2021), a three-judge panel rejected a challenge to the Illinois House and Senate Districts under the VRA and the Equal Protection Clause. In so doing, the court rejected the plaintiffs' claims because race did not "predominate" in the redistricting process. *Id.* at 851, 883.

Defendants' reliance on *McConchie* collapses for three reasons. First, it was decided before the tectonic shift in *Callais*. *Callais* leaves no more room for state statutory redistricting criteria that explicitly use race. None. Second, *McConchie* involved a Fourteenth Amendment challenge, and Defendants suffer from the same confusion in reliance on *McConchie*'s

---

[3] Even if Defendants acknowledged the constitutional defects and sought to engage in a severability discussion, that does not merit dismissal of the action. The entirety of the Act concerns racial considerations in redistricting. Rewriting statutes is a job for the legislature, not the courts. *See Randall v. Sorrell*, 548 U.S. 230, 262 (2006).

Fourteenth Amendment discussion as they do throughout their memorandum. Third, and perhaps worst for Defendants, the panel did not discuss the Act at all, much less confirm its validity.

If *McConchie* has any applicability here, it was the panel's finding that race played a role in the challenged map. *Id*. at 882 ("race was *a*, not *the* decisive factor" (emphasis in original)). Rather than absolving the Defendants of liability, the *McConchie* court teases out how the Act infused race into the line drawing process and supports the allegations in the Complaint. Dkt. 1 at ¶ 5.

### 2. Plaintiff Pleaded a Section 2 Claim.

The VRA "was adopted pursuant to Congress' authority to enforce the Fourteenth and Fifteenth Amendments." *Nipper v. Smith*, 39 F.3d 1494, 1515-16 (11th Cir. 1994). Section 2 provides that "[n]o voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color." 52 U.S.C. § 10301(a).

Defendants' argument that Plaintiff Ives had to specify the racial group with less opportunity than others under the State's current map fails because Defendants continue to misunderstand Plaintiff Ives' Fifteenth Amendment claims. A plaintiff bringing a Fifteenth Amendment challenge must prove what the defendant did, not establish the plaintiff is the right race. "The Amendment grants protection to all persons, not just members of a particular race." *Rice*, 528 U.S. at 512.

Defendants mangle their reliance on *Callais*. Defendants argue that "Plaintiffs alleging a [S]ection 2 violation thus must provide a 'comparator to be used in determining whether' members of a racial group have 'less opportunity' than other voters to elect their candidates of

choice. *Callais*, 146 S. Ct. at 1154." Dkt. 13 at 18. This is wildly off the mark and is aimed at a results claim under Section 2.

It gets worse.

Defendants conjure the *Gingles* preconditions: "three conditions that plaintiffs must satisfy to make out a Section 2 claim after *Callais*," Dkt. 13 at 19. Plaintiff can be safely 1,000 miles away from reliance on the *Gingles* preconditions in a Fifteenth Amendment challenge or VRA Section 2 claim based solely on the intent prong, not the results prong as amended in 1982. Defendants ham-handedly rely on the three preconditions, yet they are actually the three conditions in the updated *Gingles* framework that relates to how a plaintiff carries its "disentanglement burden" when a state defends a districting scheme based on politics. *See Callais*, 146 S. Ct. at 1156-60.

Simply, when a plaintiff challenges a map as a racial draw and a defendant alleges the map is a partisan draw, *see Rucho v. Common Cause*, 588 U.S. 684 (2019), a plaintiff has the burden of presenting their own map free of racial data that accomplishes the partisan goals cited by defendants. *See e.g. Alexander v. S. Carolina State Conf. of the NAACP*, 602 U.S. 1, 10 (2024). Defendants are confused – perhaps understandably – by those complex multi-layered elements arising from a partisan defense and other Voting Rights Act theories. But they are not the controlling legal framework here. Put another way, Defendants are citing terms of art from a complex game of Jenga while the challenge here is the simpler game of Go Fish. Either Defendants hold a single race card, or they don't.

Defendants argue that not everyone may bring a civil rights action and only those in a "protected class" have the right to do so. Dkt. 13 at 18-19 ("plaintiff fails to specify which—if any—racial group she alleges has less opportunity than others"). Plaintiff properly pleads a

Fifteenth Amendment claim by alleging that race is used to abridge the right to vote or to mandate racial redistricting criteria. What race or class the plaintiff occupies is irrelevant to a Fifteenth Amendment claim. Section 2's intent prong protections extend to every American. Because "the focus of §2 must be enforcement of the Fifteenth Amendment's prohibition on *intentional* racial discrimination," *Callais*, 146 S. Ct. at 1155 (emphasis in original). Section 2 and the Fifteenth Amendment are synonymous. The "Fifteenth Amendment applies with equal force regardless of the particular racial group targeted by the challenged law." *Davis*, 932 F.3d at 832. *See also*, *United Jewish Orgs., Inc. v. Carey*, 430 U.S. 144, 165 (1977) (holding a "plan [that] did not minimize or unfairly cancel out white voting strength" complied with the Fifteenth Amendment); *United States v. Brown*, 494 F. Supp. 2d 440, 449 (S.D. Miss. 2007) (holding defendants violated the intent prong of Section 2 of the VRA when they "engaged in racially motivated manipulation of the electoral process in Noxubee County to the detriment of white voters"), *aff'd United States v. Brown*, 561 F.3d 420 (5th Cir. 2009).

## CONCLUSION

Defendants' motions should be denied.

July 24, 2026

  /s/  Kaylan Phillips
Kaylan Phillips
J. Christian Adams*
Joseph Nixon
PUBLIC INTEREST LEGAL FOUNDATION
107 S. West Street, Suite 700
Alexandria, VA 22314
Tel: (703) 745 5870
kphillips@publicinterestlegal.org
adams@publicinterestlegal.org
jnixon@publicinterestlegal.org
  * *Application for admission forthcoming*

Attorneys for Plaintiff

14

## CERTIFICATE OF COMPLIANCE

I certify pursuant to Civil Local Rule 7.1(B)(4)(c) that this document complies with the type-volume limitation. This document contains 4,021 words, including all headings, footnotes, and quotations.

  /s/  Kaylan Phillips
Kaylan Phillips
