E-FILED
Friday, 07 August, 2026 12:37:15 PM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**
**SPRINGFIELD DIVISION**

| | |
|---|---|
| JEANNE IVES,<br><br>*Plaintiff*,<br><br>v.<br><br>JB PRITZKER, in his official capacity as Governor of Illinois; BERNADETTE MATTHEWS, in her official capacity as Executive Director of the Illinois State Board of Elections; and the ILLINOIS STATE BOARD OF ELECTIONS,<br><br>*Defendants*. | No. 3:26-cv-3158-SEM-DJQ |

**GOVERNOR PRITZKER'S REPLY IN SUPPORT OF**
**HIS MOTION TO DISMISS PURSUANT TO RULES 12(B)(1) AND 12(B)(6)**

KWAME RAOUL
Attorney General of Illinois

Alex Hemmer
Michelle Petersen
Holly Berlin
Office of the Illinois Attorney General
115 S. LaSalle St.
Chicago, IL 60603
alex.hemmer@ilag.gov
(312) 814-3000

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ........ ii

INTRODUCTION ........ 1

ARGUMENT ........ 1

I. The Complaint Fails To Plausibly Allege Article III Standing. ........ 1

II. The Complaint Fails To Plausibly Allege Claims On The Merits. ........ 5

A. The complaint fails to plausibly allege a Fifteenth Amendment claim. ........ 5

B. The complaint fails to plausibly allege a Voting Rights Act claim. ........ 9

CONCLUSION ........ 11

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abbott v. Perez*,
585 U.S. 579 (2018) .......... 10

*Ala. Legislative Black Caucus v. Alabama*,
575 U.S. 254 (2015) .......... 2, 3, 4

*Alexander v. S.C. State Conf. of the NAACP*,
602 U.S. 1 (2024) .......... 7

*Allen v. Wright*,
468 U.S. 737 (1984) .......... 3

*Ames v. Ohio Dep't of Youth Servs.*,
605 U.S. 303 (2025) .......... 9

*Easley v. Cromartie*,
532 U.S. 234 (2001) .......... 6

*Gill v. Whitford*,
585 U.S. 48 (2018) .......... 1, 3, 4

*Lerman v. Board of Elections*,
232 F.3d 135 (2d. Cir. 2000) .......... 5

*Louisiana v. Callais*,
146 S. Ct. 1131 (2026) .......... 5, 7

*McConchie v. Scholz*,
577 F. Supp. 3d 842 (N.D. Ill. 2021) .......... 2

*Miller v. Johnson*,
515 U.S. 900 (1995) .......... 1, 5

*Radogno v. ISBE*,
No. 11-cv-4884, 2011 WL 5025251 (N.D. Ill. Oct. 21, 2011) .......... 6

*Shaw v. Reno*,
509 U.S. 630 (1993) .......... 3

*United Jewish Orgs. of Williamsburgh, Inc. v. Carey*,
430 U.S. 144 (1977) .......... 10

*United States v. Brown*,
494 F. Supp. 2d 440 (S.D. Miss. 2007)....................10

*United States v. Hays*,
515 U.S. 737 (1995)....................1, 2, 3, 4, 5

*United States v. Salerno*,
481 U.S. 739 (1987)....................6

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
429 U.S. 252 (1977)....................9

*Voinovich v. Quilter*,
507 U.S. 146 (1993)....................7

*White v. Regester*,
412 U.S. 755 (1973)....................9

**Constitutional Provisions and Statutes**

U.S. Const. amend. XV....................2

10 ILCS 120/5-5....................5

## INTRODUCTION

Plaintiff strongly opposes the Illinois Voting Rights Act of 2011, but her opposition to the Act does not allow her to rewrite decades of settled legal principles. The Supreme Court has held that a voter has standing to challenge race-based redistricting only if she actually *lives* in a district that was drawn based on race, *United States v. Hays*, 515 U.S. 737, 745 (1995), but plaintiff does not allege the legislative districts in which she lives or plausibly allege that they were drawn based on race. The Supreme Court has also held that a State can consider race in redistricting as long as race does not predominate over traditional redistricting factors, *Miller v. Johnson*, 515 U.S. 900, 916 (1995), but the Act requires Illinois legislators to *subordinate* race to those factors, and plaintiff does not contend otherwise. The entire basis of plaintiff's opposition to the motion to dismiss is that these rules do not apply to her. But plaintiff is wrong: Her suit challenges a law that governs Illinois's decennial redistricting process on the ground that it yields race-based legislative districts, and so the settled rules applicable to such challenges apply. The Court should enforce those rules and dismiss this complaint.

## ARGUMENT

### I. The Complaint Fails To Plausibly Allege Article III Standing.

Plaintiff has not plausibly alleged the existence of a concrete harm that is "individual and personal" to her and that is traceable to the Act. *Gill v. Whitford*, 585 U.S. 48, 65-66 (2018). The complaint should be dismissed on that basis.

As the Governor explained in his motion to dismiss, Doc. 13 ("Mem.") at 6-9, the Supreme Court has squarely held that "a plaintiff who alleges that [s]he is the object of a racial gerrymander . . . has standing to assert only that h[er] own district has been so gerrymandered." *Gill*, 585 U.S. at 66; *see Hays*, 515 U.S. at 744-45. And the Court has enforced that rule by rejecting challenges brought by plaintiffs who fail to allege or establish that their *own* districts have been drawn based

on race. *See id.* at 745-46; *Ala. Legislative Black Caucus v. Alabama*, 575 U.S. 254, 263-64 (2015). Plaintiff's complaint transparently fails to comply with that rule: Plaintiff does not allege *which* legislative and representative districts she resides in, nor how any racial classification "denied or abridged" her right to vote in those districts based on race. U.S. Const. amend. XV, § 1. She has therefore failed to plead an individualized injury of the kind described in *Hays*.

That failure is not merely an abstract one: As the Governor explained, Mem. 2-5, the Act instructs Illinois legislators to consider whether it is possible to preserve the voting influence of racial or language minorities only *after* applying traditional districting criteria, and only where doing so would be consistent both with those criteria and with federal law. Put differently, Illinois legislators consider race in drawing legislative districts *only* (a) where doing so would allow them to preserve certain minority voting blocs; (b) where doing so would also effectuate the State's other redistricting goals; and (c) where doing so would also be consistent with federal law, including the Constitution. In many cases, in other words, race plays no role in drawing any specific legislative district. Just to take one example, a three-judge panel evaluating the current legislative map found "overwhelming evidence" that one specific district challenged in that case was "drawn to protect Democrats from Republican challengers," and that there was no "other viable way to protect" the incumbents in question. *McConchie v. Scholz*, 577 F. Supp. 3d 842, 880-81 (N.D. Ill. 2021). If plaintiff lives in that district, she has not been "sorted based on race." Doc. 18 ("Resp.") at 4. But plaintiff has failed to plead facts that would allow defendants or the Court to know.

Plaintiff admits that she has not pleaded facts about her "specific district or districts," *id.* at 6, and so tacitly agrees that dismissal is appropriate if *Hays* applies. Plaintiff just believes that *Hays* does *not* apply. *Id.* at 5. But plaintiff's arguments in support of that position are flawed.

Plaintiff argues first that *Hays* and its progeny do not apply because they arise under the Fourteenth Amendment, and she pleaded a Fifteenth Amendment claim. Resp. 5. But standing rules do not turn on the specific legal claim a plaintiff has alleged. That is why the Supreme Court had no trouble in *Gill* (a partisan-gerrymandering case) applying the standing rule set out in *Hays* (a racial-gerrymandering case). *Gill*, 585 U.S. at 66-67. Indeed, plaintiff appears to agree that her *injury* is the same as the injury described in the Supreme Court's Fourteenth Amendment racial-gerrymandering cases, namely that she has been "separate[d] into," Resp. 4, or "sorted into," *id.* at 5, a district based on race.[1] That is precisely the language used by the Supreme Court to describe the injury recognized in racial-gerrymandering cases. *See, e.g.*, *Shaw v. Reno*, 509 U.S. 630, 645 (1993) (voters alleged they had been "separat[ed] . . . by race"); *Ala. Legislative Black Caucus*, 575 U.S. at 263 (same). Plaintiff cannot claim the benefits of these cases without likewise accepting their limitations.

Plaintiff also suggests that *Hays* and *Alabama Legislative Black Caucus* "do not apply here because those plaintiffs were focused on specific districts." Resp. 5. Plaintiff badly misreads these cases. The plaintiffs in *Hays* "insist[ed] that they challenged [the legislative map] in its entirety, not [a single district] in isolation." *Hays*, 515 U.S. at 746. But the Supreme Court had no difficulty rejecting that argument, explaining that the fact that the legislative map "affect[ed]" all voters in the State did not mean that "*every* . . . voter ha[d] standing to challenge [it] as a racial classification." *Id.* "Only those citizens able to allege injury 'as a direct result of having *personally* been denied equal treatment,'" *id.* (quoting *Allen v. Wright*, 468 U.S. 737, 755 (1984)), could bring suit. Similarly, in *Alabama Legislative Black Caucus* the Supreme Court criticized the district

[1] Plaintiff twice states in her brief that she is a former candidate for political office, Resp. 2, 3, but the complaint lacks any such allegations, and plaintiff develops no argument as to why it might confer Article III standing, so any such argument is waived.

court for entertaining a claim just like plaintiff's—i.e., that "race improperly motivated the drawing of boundary lines of the State *considered as a whole*." 575 U.S. at 262. That approach was error, the Court held, because "the harms that underlie a racial gerrymandering claim" were "personal," threatening only "a voter who lives in the *district*" that was gerrymandered. *Id.* at 263. The same is true here.

Plaintiff finally contends that *Hays* does not apply because she is challenging "criteria" that govern redistricting rather than "a map." Resp. 5-6. But plaintiff cannot evade the rule that she plead a "personal," "individualized" injury, *Hays*, 515 U.S. at 744, simply by challenging a state action that is *upstream*—and so further removed—from the drawing of her own legislative district. If anything, the emphasis in *Hays* and its progeny on establishing a "district specific" injury, *Gill*, 585 U.S. at 66, is *more* important in such a case, given the more attenuated connection between the Act and the alleged injury. Indeed, as discussed, *supra* p. 2, it will often be the case under the Act that race plays no role at all in the drawing of any specific legislative district, making it all the more important for a plaintiff to allege an "individualized" harm, *Hays*, 515 U.S. at 744, rather than a generalized one. Indeed, plaintiff admits that, under her view, "any adult" in Illinois would have standing to challenge the Act, Resp. 4—a concession in serious tension with the Supreme Court's repeated rejection of standing based on "generalized grievances," *see Gill*, 585 U.S. at 65; *accord Hays*, 515 U.S. at 744 (rejecting plaintiffs' position that "anybody in the State has a claim" to challenge legislative map).

Plaintiff's remaining arguments lack merit. Plaintiff repeatedly insists that the Act injures her because it "requires racial considerations when redistricting," Resp. 4; *accord id.* at 7-8 (Act "mandates that race is infused into the redistricting process"). But the Act does not require any such thing, and, as discussed, *supra* p. 2, many Illinois legislative districts are drawn without any

consideration of race at all. Plaintiff's failure to plausibly allege facts that would allow the Court or the parties to infer that *her* district was drawn on that basis is thus fatal to her claims. Plaintiff's single cited authority, *Lerman v. Board of Elections*, 232 F.3d 135 (2d. Cir. 2000), is of no help: *Lerman* distinguished the injury at issue there (the suppression of the plaintiff's political speech) from a "*representational* injury of the sort considered in *Hays*," *id.* at 143. But plaintiff's alleged injury here *is* "representational" in nature, as she appears to agree, Resp. 8 (citing with approval *Lerman*'s discussion of "representational harms" that "result from being identified and placed in a particular electoral district based on one's race"), so *Hays*'s rule applies.

At bottom, plaintiff was required to plausibly allege that she *herself* "resides in a racially gerrymandered district." *Hays*, 515 U.S. at 745. Plaintiff failed to do so, and the complaint should be dismissed under Rule 12(b)(1).

## II. The Complaint Fails To Plausibly Allege Claims On The Merits.

If the Court reaches the merits, it should dismiss the complaint under Rule 12(b)(6).

### A. The complaint fails to plausibly allege a Fifteenth Amendment claim.

Plaintiff failed to plausibly allege that the Act facially violates the Fifteenth Amendment. The Supreme Court has squarely held that a State does not violate the Constitution simply by being aware of race in districting; rather, a plaintiff alleging a constitutional violation must show that "race was the *predominant* factor motivating" a district's creation—that the State "subordinated traditional race-neutral districting principles, including but not limited to compactness, contiguity, and respect for political subdivisions" to "racial considerations" in drawing it. *Miller*, 515 U.S. at 916 (emphasis added); *accord Louisiana v. Callais*, 146 S. Ct. 1131, 1147 (2026). As the Governor explained, Mem. 11-13, the Act requires state legislators to comply with that rule, both by directing them to "subordinate" any consideration of race to other districting principles and by forbidding them from considering race in a manner that would conflict with the Constitution. *See* 10 ILCS

120/5-5(a), (d). At minimum, plaintiff cannot show that the Act *facially* violates the Constitution—i.e., that "no set of circumstances exists under which the Act would be valid," *United States v. Salerno*, 481 U.S. 739, 745 (1987)—as a three-judge court held just after the Act was enacted, *Radogno v. ISBE*, No. 11-cv-4884, 2011 WL 5025251, at *8 (N.D. Ill. Oct. 21, 2011).

Plaintiff's primary response is that none of these rules apply because her challenge to the Act arises under the Fifteenth Amendment, not the Fourteenth. Resp. 8-10. In plaintiff's apparent view, even if a State *can* take account of race in drawing maps under the Fourteenth Amendment, under the circumstances set out in *Shaw* and *Miller*, the Fifteenth Amendment separately erects an "absolute" bar to doing so. *Id.* at 9. That is an astonishing position. If that were the law, essentially every case in which courts—including the Supreme Court—have rejected racial-gerrymandering claims is wrongly decided, because (again, under plaintiff's view) *any* consideration of race in this context categorically violates the Fifteenth Amendment. In *Easley v. Cromartie*, 532 U.S. 234 (2001), to take one example, all parties agreed that the State had *considered* race in drawing the district in question; the question was just whether the State's "motive was *predominantly* racial," as opposed to political, *id.* at 240-41 (emphasis added). The Supreme Court exhaustively reviewed the record before concluding that it was not, *id.* at 243-58—but if plaintiff's view of the law were correct, that was unnecessary, because the State had violated the Fifteenth Amendment the moment that it considered race at all. The same could be said of countless other cases in which courts have rigorously enforced the rules the Supreme Court has established for racial-gerrymandering cases—rules plaintiff now contends are beside the point, if only a plaintiff is clever enough to invoke the Fifteenth Amendment rather than the Fourteenth.

Plaintiff, in other words, is asking the Court to recognize a novel constitutional rule under which a State is wholly prohibited from considering race in redistricting. *E.g.*, Compl. ¶ 28 (the

Fifteenth Amendment prohibits use of "**any** . . . racial means"). But, as plaintiff accepts, Resp. 10, that is not the rule governing Fourteenth Amendment racial-gerrymandering claims, which is why plaintiff reaches for the Fifteenth Amendment instead. But the Supreme Court has never "held *any* legislative apportionment inconsistent with the Fifteenth Amendment," *Voinovich v. Quilter*, 507 U.S. 146, 159 (1993) (emphasis added), much less applied the categorical rule that plaintiff seeks in doing so. And plaintiff cites no lower court that has ever recognized or applied such a rule in the redistricting context. Indeed, as the Governor explained, Mem. 15-16, substantially all of the Fifteenth Amendment cases cited in the complaint concern voter-eligibility rules, not redistricting. *Cf. Alexander v. S.C. State Conf. of the NAACP*, 602 U.S. 1, 55 (2024) (Thomas, J., concurring) ("[T]he Fifteenth Amendment addresses only matters relating to access to the ballot." (cleaned up)). Plaintiff does not acknowledge, much less respond to, this point.

Plaintiff identifies no reason the Court should be the first to recognize a categorical rule prohibiting the mere consideration of race in the redistricting context. Plaintiff cites the Supreme Court's recent opinion in *Callais*, Resp. 9-10, but the Court there *reaffirmed* the longstanding framework governing racial-gerrymandering cases, 146 S. Ct. at 1147 ("in gerrymandering cases a challenger must show that race was the government's predominant consideration"), and, as discussed, Mem. 11-15; *supra* p. 5, the Act facially complies with that framework. And although plaintiff asserts that *Callais* involved a "Fifteenth Amendment challenge" to Louisiana's maps, Resp. 10, the Supreme Court itself characterized the claims before it as "based on the Fourteenth Amendment." 146 S. Ct. at 1160 n.2 (emphasis omitted); *see id.* at 1160 (Fourteenth Amendment is "the linchpin of this suit"). Although the Court discussed the Fifteenth Amendment to inform its interpretation of section 2 of the Voting Rights Act, *id.* at 1153-61, that discussion is irrelevant here, because Illinois's maps were not drawn for the purpose of complying with that Act.

At bottom, plaintiff has essentially no argument that, *if* the Supreme Court's longstanding framework for assessing racial-gerrymandering claims applies, the Act is facially unconstitutional. Plaintiff asserts that "a facial constitutional challenge is appropriate" because the Act "mandates using race." Resp. 10. But the Act does not "mandate[] using race," *id.*: As discussed, *supra* p. 2, it allows Illinois legislators to consider race in drawing legislative districts only in certain narrow circumstances, namely where doing so would allow the State to preserve certain minority voting blocs while still effectuating its other redistricting goals and without violating federal law. To the extent plaintiff views the Act as nonetheless facially unconstitutional because (for instance) it "uses race explicitly" or "refers to racial groups," Resp. 10-11, that rests on the premise that the Fifteenth Amendment categorically bars the mere consideration of race in redistricting—a premise that, as discussed, *supra* pp. 6-7, no other court has accepted and that this Court should reject.

Plaintiff's remaining responses to the motion to dismiss likewise rest on her mistaken view of the Fifteenth Amendment's scope, and should be rejected for the same reasons. Plaintiff argues, for instance, that *Radogno* (which upheld the facial constitutionality of the Act) and *McConchie* (which upheld the constitutionality of multiple districts against racial-gerrymandering challenges) are irrelevant because they were "decided under the Equal Protection Clause," not the Fifteenth Amendment. Resp. 11-12. But, again, that means that plaintiffs in those cases failed to appreciate or invoke a source of authority that would have fundamentally altered the doctrinal rules applicable to their case. That implausible position illustrates the disruptive consequences that plaintiff's rule would have, which are reason alone to reject it. Likewise, plaintiff argues that *McConchie* was "decided before the tectonic shift in *Callais*," Resp. 11, but, again, *Callais* expressly reaffirmed the legal principles *McConchie* applied rather than altering them, *supra* p. 7, and says nothing about "state statutory redistricting criteria," Resp. 11, at all. Count One should be dismissed.

**B. The complaint fails to plausibly allege a Voting Rights Act claim.**

Plaintiff also failed to plausibly allege that the Act violates section 2 of the Voting Rights Act. The Governor explained why the Court should dismiss this claim, Mem. 18-21, and plaintiff's responses to those arguments mischaracterize and misconstrue them.

Plaintiff's argument largely proceeds from the premise that the Governor misapprehended the nature of her section 2 claim, which, she clarifies, is based on section 2's "intent" prong, rather than its "results" prong. Resp. 14. But the Governor argued throughout the motion that plaintiff also failed to allege that the Act intentionally discriminates on the basis of race. Mem. 16-17, 20. The Act does not *facially* classify voters based on race, because it protects voters of all races, just like Title VII and other antidiscrimination laws. Mem. 16; *Ames v. Ohio Dep't of Youth Servs.*, 605 U.S. 303, 310 (2025). Indeed, courts have uniformly rejected arguments that similar state voting-rights statutes trigger strict scrutiny or are unconstitutional, and the Supreme Court has uniformly denied certiorari. *See* Mem. 17 (citing caselaw). And to the extent plaintiff's view is that the Act is facially neutral but was enacted with invidious intent, *see Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977), she fails to plausibly allege any such claim, including by alleging that the Act has a disparate impact on a particular group or by providing any plausible allegations of "invidious" discriminatory intent, *White v. Regester*, 412 U.S. 755, 765 (1973). *See* Mem. 17-18, 20. Again, the Governor explained each of these points in the motion to dismiss, but plaintiff's response fails to acknowledge or respond to any of them.

It was plaintiff's burden to allege these elements in support of her section 2 claim, but she did not. In particular, assessing "whether invidious discriminatory purpose was a motivating factor demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." *Arlington Heights*, 429 U.S. at 266. And "[t]he important starting point for assessing discriminatory intent under *Arlington Heights* is the impact of the official action[:] whether it bears

more heavily on one race than another." *Reno v. Bossier Parish*, 520 U.S. 471, 489 (1997) (internal quotation marks omitted). Plaintiff's own cited case confirms the importance of plausibly alleging these elements: In *United States v. Brown*, the district court explained that "[i]f a section 2 plaintiff chooses to prove discriminatory intent," it is her burden to produce "evidence of intent" in the form of "direct or indirect circumstantial evidence," including a "history of discrimination." 494 F. Supp. 2d 440, 447 (S.D. Miss. 2007), *aff'd*, 561 F.3d 420 (5th Cir. 2009). Plaintiff's failure to plausibly allege any of these facts means that her claim must be dismissed.

Plaintiff's remaining arguments misunderstand or mischaracterize the positions set out in the motion. The Governor's argument is not that "only those in a 'protected class' have the right to" bring a civil rights suit, Resp. 13; indeed, the Governor explained that one of the reasons that the Act does *not* discriminate is that it protects all Illinois residents of all races, Mem. 16. But that does not absolve plaintiff of satisfying the requirement that a plaintiff alleging racial discrimination must allege that she was *discriminated against*—i.e., materially disadvantaged—on account of her race. *See Abbott v. Perez*, 585 U.S. 579, 603 (2018) ("Whenever a challenger claims that a state law was enacted with discriminatory intent, the burden of proof lies with the challenger, not the State."). Plaintiff appears to believe that the mere fact that the Act *mentions* race is enough to state a section 2 claim, but, again, that theory would transform the law of districting. Indeed, even the case plaintiff cites rejects her understanding of the law, explaining that "neither the Fourteenth nor the Fifteenth Amendment mandates any per se rule against using racial factors in districting and apportionment." *United Jewish Orgs. of Williamsburgh, Inc. v. Carey*, 430 U.S. 144, 161 (1977). Count Two should be dismissed.

## CONCLUSION

For these reasons, and those set out in the motion to dismiss, the complaint should be dismissed without prejudice for failure to plead Article III standing or dismissed with prejudice for failure to state a claim.

Dated: August 7, 2026

Respectfully submitted,

KWAME RAOUL
Attorney General of Illinois

/s/ Alex Hemmer
Alex Hemmer
Michelle Petersen
Holly Berlin
Office of the Illinois Attorney General
115 S. LaSalle St.
Chicago, IL 60603
alex.hemmer@ilag.gov
(312) 814-3000

*Counsel for Defendants*